Filed 10/31/22  In re B.A. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re B.A., a Person Coming Under the Juvenile Court Law. | B318626 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 18CCJP06007A |
| Plaintiff and Respondent, | |
| v. | |
| ANTOINETTE R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Marguerite Downing, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Mother Antoinette R. appeals the order terminating her parental rights to her daughter, B.A. Mother's sole claim of error is that the Los Angeles County Department of Children and Family Services (Department) made an inadequate initial inquiry concerning B.A.'s ancestry for purposes of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). We affirm.

## BACKGROUND

### 1. Overview of Proceedings

This dependency proceeding began four years ago, in 2018, when B.A. was an infant. She was detained from her parents for a litany of reasons, including ongoing Department cases concerning three of her siblings and a half sibling.

B.A. was initially placed with her maternal grandmother. She was later removed from maternal grandmother's home and placed in the care of a family friend who also had custody of B.A.'s siblings.

The parents failed to reunify with B.A. and the court terminated reunification services in July 2019. The family friend caring for B.A. wanted to adopt her. However, he passed away while the proceedings were pending, and B.A. and her siblings were placed with a relative of the family friend, Ms. B. Ms. B agreed to adopt B.A. After a series of delays to resolve impediments to adoption, the court terminated parental rights and ordered adoption by Ms. B. as B.A.'s permanent plan.

### 2. Facts Relevant to ICWA Inquiry

In September 2018, at the initial appearance hearing, mother filed a parental notification of Indian status form (ICWA-020) indicating "I have no Indian ancestry as far as I know."

Father did not appear at the initial appearance hearing, and the Department reported difficulty locating him. In an October 2018 report, the Department referred the court to prior findings of no reason to know that B.A.'s full siblings are Indian children or that two half siblings of B.A.'s—one maternal and one paternal—are Indian children. In the proceeding concerning the paternal half sibling, the Department noted that father had appeared and denied Native American heritage.

Father was later located. In advance of a scheduled hearing in October 2018, at which father personally appeared father filed a form ICWA-020 indicating "I have no Indian ancestry as far as I know." On the record before it, the court found that it "ha[d] no reason to know that the [ICWA] applies or that [B.A.] is an Indian child." By its minute order of the same date, the court admonished parents to keep their attorneys and the court aware of any new information relating to possible ICWA status.

According to a report the Department filed in October 2018, mother reported she grew up in Los Angeles where she was raised, together with a brother and two sisters, by her mother and stepfather. When her family moved to Lancaster, she dropped out of school and returned to Los Angeles to live with an aunt, but she later returned to her mother's house in Lancaster. Maternal grandparents are now both deceased. Although it is unclear when he died, we are directed to no record of contact between the Department and mother's stepfather. The maternal grandmother died in 2019 while these proceedings were pending. The Department had contact with the maternal grandmother prior to her death but there is no record that it asked the maternal grandmother about Indian heritage.

Aside from his ICWA-20, father's family history is undeveloped in the record, apparently owing to difficulty in locating father throughout the proceedings and obtaining information from him.

We are directed to no evidence in the record that the Department ever asked any extended family members about the children's possible Indian heritage.

## DISCUSSION

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)  It is incumbent upon a state court administering a proceeding where child custody is at issue to inquire whether the subject child is an Indian child.  The scope of the duty on the court, as well as certain participants in the proceeding, is defined by federal regulations and related state law.  (See, e.g., 25 C.F.R. § 23.107 (2022); Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481.)

The duty of inquiry has three "phases."  Father claims error with the first.  This phase—the "initial inquiry"—applies in every case.  The initial inquiry requires the court and the Department to ask certain persons related to the proceedings about the child's possible Indian ancestry.  (See Welf. & Inst. Code, § 224.2, subds. (a), (b), (c); *In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

Where the "initial inquiry" gives "reason to believe" the child is an Indian child, but there is insufficient information to make a definitive determination, the second phase—"further inquiry"— comes into play.  (Welf. & Inst. Code, § 224.2, subd. (e)(2).) Further inquiry requires more robust investigation into possible Indian ancestry.  (See *ibid.*; *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.)  If further inquiry gives the juvenile court a "reason to

4

know" a child is an Indian child, the third phase is triggered. This phase requires that notice pursuant to ICWA be sent to the tribes to facilitate their participation in the proceedings. (§ 224.3, subd. (a)(1); *In re D.F.*, at p. 568.)

" ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

The Department was required as part of its initial inquiry to ask extended family members "whether the child is, or may be, an Indian child . . . ." (Welf. & Inst. Code, § 224.2, subd. (b); *In re S.S.* (2022) 75 Cal.App.5th 575, 581.) Although the Department asked the parents about Indian heritage, it failed to inquire of extended family members with whom the Department had contact.

In the absence of any evidence the Department complied with its Welfare and Institutions Code section 224.2, subdivision (b), duty to inquire of extended family members, the juvenile court's finding that ICWA does not apply is error. (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)

However, we can reverse only if the error was prejudicial. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*), citing Cal. Const., art. VI, § 13.)

Courts are divided on what showing of prejudice warrants reversal for initial inquiry errors. "Some courts have addressed this problem by requiring an appellant who asserts a breach of the duty of inquiry to, at a minimum, make an offer of proof or other affirmative assertion of Indian heritage on appeal." (*In re S.S., supra,* 75 Cal.App.5th at pp. 581–582, citing cases.) Others have excused such a showing, effectively treating failure to inquire as error per se. (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556; *In re J.C.* (2022) 77 Cal.App.5th 70, 80.) The Fourth Appellate District in *Benjamin M., supra,* 70 Cal.App.5th 735, took a third approach, concluding that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) Our court recently took a fourth approach, concluding initial inquiry errors require reversal only when the record of proceedings in the juvenile court or a proffer of evidence made on appeal suggests a reason to believe that the child may be an Indian child. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.)

We have previously rejected the error per se line of cases. (*In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099.) Under any of the other three lines of cases, the juvenile court's error here was harmless.

On the record before us, there is no reason to believe there is readily available information that is likely to bear meaningfully on whether B.A. has Indian ancestry. Mother and father appeared and unequivocally denied knowledge of any Indian ancestry. Prior proceedings involving other children of both parents (and each

6

parent) have resulted in findings of no reason to know their children have Indian ancestry. Nothing in the record concerning the parents' background indicates there is reason to believe B.A. has Indian ancestry.

In her opening brief, mother only argued that "[a]n inquiry of [B.A.'s] maternal grandmother would have been easy and was likely to bear meaningfully upon whether [B.A.] was an Indian child." But mother failed to acknowledge that maternal grandmother is now deceased. For the first time in her reply brief, mother argued the Department might have also inquired with mother's siblings and aunt or father's brothers, who were known to the family friend that initially sought to adopt her. But there is no record that these people were available to the Department during the proceedings, and the record reflects that DCFS had a difficult time maintaining contact with the parents so as to ask if they had any contact information for any of these extended family members. Indeed, as mother concedes, father "made himself unavailable to the department" and the family friend who may have had information as to the whereabouts of father's brothers is now deceased. Further, the record contains no basis to conclude the parents' respective siblings or mother's aunt would have more information about parents' heritage than they do.

Nor has anyone so much as suggested there is reason to believe B.A. might have Indian ancestry. Certainly, mother has made no offer of proof that she is an Indian child. Instead, mother and father both certified they have no information B.A. may have Indian heritage. As such, this case is unlike *Benjamin M.* There, the father was entirely absent from the proceedings and no person from the father's side of the family had been asked about Indian ancestry. With information about ancestry on the father's side

7

completely "missing," inquiry with a person sharing the father's ancestry "would likely have shed meaningful light on whether there [wa]s reason to believe Benjamin [wa]s an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) No such facts are present here.

Given the absence of any evidence or claim that B.A. might have Indian ancestry, mother's "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated [B.A.'s] Indian ancestry" does not support a finding of prejudice. (*In re Darian R.*, *supra,* 75 Cal.App.5th at p. 510.)

### DISPOSITION

The order terminating parental rights is affirmed.


GRIMES, J.

I CONCUR:


STRATTON, P. J.

8

**WILEY, J., Dissenting.**

I agree with Justice Lavin's analysis. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025 (dis. opn. of Lavin, J.).) I adhere to the views I have stated in my previous 10 dissents on this issue.


WILEY, J.